(117 N. W. 528.)

---

## WILLIAM STREHLOW v. DONALD McLEOD.

Opinion filed July 8, 1908.

On rehearing September 11, 1908.

**Chattel Mortgages — Conversion by Mortgagee Extinguishes Lien — Foreclosure.**

1. In an action brought to foreclose a chattel mortgage upon certain grain, a warrant was issued under the provisions of section 7513, Rev. Codes 1905, pursuant to which all the grain grown on the land described in the mortgage was seized by the plaintiff, and subsequently, and before trial, the same was wrongfully converted by a sale thereof. Such grain was the sole property covered by the mortgage, and its wrongful conversion by plaintiff extinguished the lien of the mortgage, and thereby the cause of action for such foreclosure ceased to exist.

**Set-off and Counterclaim — Confusion of Goods — Accrual of Cause of Action.**

> 2. At the time of such seizure, other grain of the same kind, which had been intermingled by defendant with that covered by the mortgage, was also seized and converted in like manner. In his answer defendant pleaded a counterclaim for damages, based upon such conversion, and was allowed to recover in the lower court. *Held* error, as the cause of action contained in this so-called counterclaim had not accrued at the time the action was commenced.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Wiliam Strehlow against Donald McLeod. Judgment for defendant, and plaintiff appeals.

Reversed and dismissed.

*Engerud, Holt & Frame,* for appellant.

In the foreclosure of a mortgage on property in defendant's possession, mortgagor cannot gainsay his act in giving the mortgage. Redman v. Bellamy, 4 Cal. 247; Land Association v. Viera, 48 Cal. 572; Tartar v. Hall, 3 Cal. 263; Carson v. Cochran, 53 N. W. 1130; Barber v. Harris, 15 Wend. 615; Strong v. Waddell, 56 Ala. 471; Wyckoff v. Gardner, 20 N. J. L. 556; Cobbey on Chattel Mortgages, section 785; Harvey v. Harvey, 13 R. I. 598; Adams v. Wildes, 107 Mass. 123; Willard v. Rice, 52 Mass. 493.

Reservations of titles to crop to secure performance of contract may be waived. Tanner v. Engine Co., 7 So. 187; Gorham v. Holden, 9 Atl. 894; Hinchman v. Railway Co., 44 Pac. 867; Thomas v. Lewis, 15 So. 830; Holt Mfg. Co. v. Ewing, 42 Pac. 435; Kearney Milling & Elevator Co. v. Railroad Co., 66 N. W. 1059; Van Winkle v. Crowell, 146 U. S. 42.

Comingling mortgaged goods with those not mortgaged, without mortgagee's consent, warrants the latter in holding the entire mass. Adams v. Wildes, 107 Mass. 123; Willard v. Rice, 52 Mass. 493; Merchants' National Bank v. McLaughlin, 2 Fed. 128; Burns v. Campbell, 71 Ala. 271; Samson v. Rose, 65 N. Y. 411; Dunning v. Sterus, 9 Barb. 630; Krith v. Rogers, 101 N. C. 263; Jones on Chattel Mortgages, Par. 481; Cobbey on Chattel Mortgages, Par. 765.

For wrong done under a warrant of attachment, a separate action is necessary. Jewett Bros. v. Huffman, 14 N. D. 110, 103

N. W. 408; Sackett & Co. v. Partridge, 4 Iowa, 416; Churchill v. Fullam, 8 Iowa, 45; Elliott v. Mitchell, 3 Green 237; Vieths v. Hogge, 8 Iowa, 163; Abbott v. Whipple, 4 Green, 320; Burrows v. Lehndorff, 8 Iowa, 96.

*V. R. Lovell,* for respondent.

Until division of crop, where lessor reserves title, chattel mortgage will not attach. Hawk v. Konouzski, 10 N. D. 37, 64 N. W. 563.

Bailee may maintain trover for the conversion of bailed property. 28 Am & Eng. Enc. Law (2d Ed.) 676.

In an action prematurely brought, a supplemental complaint cannot base a new cause on facts occurring pending the action. 21 Enc. Pl. & Pr. 18.

FISK, J. The record in this case presents an anomalous condition. The action was brought in the district court of Cass county for the foreclosure of a chattel mortgage, executed and delivered by the defendant to the plaintiff, upon an undivided one-half interest in certain barley raised during the year 1905, on land described in the complaint. There is no dispute as to the giving of the mortgage, or as to the existence of the indebtedness secured thereby. The complaint is in the usual form, and the answer, after admitting the execution of the notes and chattel mortgage, alleges in effect that the grain grown on the land described in the mortgage is the property of one E. L. Young, the owner of said land, and that defendant farmed said land during said year under the ordinary farm contract, by the terms of which all title to the crops produced thereon during said year should be and remain the property of the said Young, as security for the payment by the defendant to the said Young of all advances made by Young to him, and all indebtedness due from him to the said Young, the title to all such crops to remain in said Young until a settlement was had between them on account of all matters arising out of the farming operations for that year, and that such contract contained a stipulation that, until such settlement and the payment of all such advances, the title should remain in said Young. It further alleges that no such settlement had ever taken place. By the terms of this contract Young was to pay the defendant, by way of compensation for his services, the one-half of the crop raised on said

tract during said season, but such payment was not to be made until defendant had fully performed the terms of the contract on his part to be kept and performed. The answer further alleges that, at or about the time of the commencement of the action, the plaintiff seized and took into his possession a large amount of barley, some of which was grown on land other than that described in the mortgage, but owned by the said Young, and which grain was raised under the terms of said contract; the title thereto being in the said Young. It also alleges that at the time and place of such seizure barley was worth the sum of about 35 cents per bushel, and that by reason of the facts aforesaid the defendant was damaged in the sum of $350. The plaintiff served a reply to the new matter contained in said answer, and later a supplemental reply was served pleading an estoppel as against the defendant from asserting that anyone, other than the defendant, was the owner of such grain, and further alleging that since the service of the previous reply, and on or about April 19, 1906, the said Young demanded one-half of the barley seized by the sheriff in this action, and that such demand was complied with by delivering same to him. The trial court denied plaintiff any relief, and gave defendant judgment on his counterclaim for the sum of $101.80 and interest, and the case is here for trial de novo.

. The proof shows that there were about 936 bushels of barley seized and taken into the possession of the sheriff under a warrant issued pursuant to section 7513, Revised Codes 1905. About five-elevenths thereof was grown on the land described in the chattel mortgage, and the remainder upon other land owned by Young and farmed by defendant under said farm contract. At the time the grain was threshed the defendant intermingled the same by placing it in one bin or granary on the farm. The undisputed proof shows that some time after its seizure Young demanded from the plaintiff one-half of said grain, and the same was delivered pursuant to the demand. The proof also shows that some time prior to the trial the plaintiff sold the remaining portion to an elevator company. We therefore have the strange anomaly of the plaintiff seeking to obtain a judgment in foreclosure under this chattel mortgage after the property has been sold and converted by him; and defendant asserts that the chattel mortgage never attached to the grain, for the reason that he, as mortgagor, never acquired any title therein, and that the title thereto is in said Young. At the same time he

asked for and was given a judgment upon his so-called counter-claim for a portion of the grain, upon the theory that he was the owner of said grain, and that the same was, since the commence-ment of the action, wrongfully seized and converted by the plain-tiff. As we view it, but two propositions are necessarily involved in this controversy. First, plaintiff's right to maintain his action; and, second, defendant's right to maintain his counterclaim. Other interesting questions are presented by the record involving the rule of estoppel, also the ownership of the grain, and the relative rights of the parties to the portion thereof grown on land other than that described in the mortgage, and which was by defendant' intermingled with the grain covered by the mortgage, etc.; but our conclusions upon the propositions first stated render it un-necessary to notice these questions at this time. They may arise later in other proceedings between the parties, and any expression of our views at this time would merely amount to dicta. We are convinced that, by the sale and conversion of the grain during the pendency of the action, plaintiff's cause of action for the fore-closure of the mortgage, conceding that he had a cause in the begin-ning, was thereby destroyed. There was nothing thereafter left upon which to foreclose, and a judgment of foreclosure would have been fruitless and meaningless. It would be similar to a foreclosure under a mortgage covering property which had been totally burned or otherwise put out of existence. By the sale and consequent conversion of the barley the lien of the mortgage, if it had ever attached, ceased to exist. This is self-evident. The relief prayed for by plaintiff was therefore properly denied.

This brings us to a consideration of defendant's counterclaim, upon which he was allowed to recover an affirmative judgment against the plaintiff. Having, in effect, alleged ownership and right of possession in Young of the grain in controversy, it would seem that his only cause of action, if any, would be one for dam-ages, to his contingent or conditional interest or estate in the property. Both he and Young might maintain an ac-tion against the plaintiff for damages but their recovery would necessarily be limited to the value of their respec-tive interests in the grain. Of course both could not re-cover its full value. Whether such actions would at common-law be designated as trover, or some other form of trespass on the case, is immaterial. But however this may be, we are entirely

clear that the defendant's cause of action for damages for the conversion could not be pleaded as a counterclaim in this action, for it was not in existence at the time the action was commenced. The grain was seized under a warrant issued in the action, and this was necessarily subsequent to the commencement of the action. The argument of respondent's counsel that the provisions of section 7515, Revised Codes 1905, relating to the conditions of the undertaking required to be given by the plaintiff before a warrant may issue for the seizure of the property, contemplate that a counterclaim of this character is permissible does not meet with favor by this court. Said statute provides that the conditions of such undertaking shall be to the effect "that if the defendant recovers judgment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages which he may sustain by reason of any seizure under the warrant." This does not contemplate that damages, by reason of seizure under the warrant, may be adjudicated in the action in which such undertaking is given, and it in no manner changes the universal rule that a counterclaim must be restricted to a cause of action in existence and owned by de-defendant at the time of the commencement of the action in which such counterclaim is pleaded. Said section 7515 in all essential particulars is identical with section 6944, providing for undertakings in attachment proceedings. While it was held in the early case of Reed v. Chubb Bros. et al., 9 Iowa, 178, that, "When the affidavit for attachment and the bond are filed, and the writ sued out at the commencement of the action, if the suit is wrongfully sued out, any damages sustained by the defendant therefrom constitute a claim held by him at the commencement of the suit, in such a sense that the same may be set off against the plaintiff's demand in the same action," this case seems to have been overruled in the late case of Youngerman v. Long, 95 Iowa, 185, 63 N. W. 674, and the rule announced in the latter case is uniformly recognized and enforced. 1 Bates, Pleadings, Practice, Parties and Forms, page 379, and cases cited. 19 Enc. Pl. & Pr. 760, and cases cited.

It is stated in respondent's brief that no objection was made to this counterclaim in the court below. It is true plaintiff's counsel did not ask to strike it out, and they served a reply thereto, but the record discloses that at the trial they objected to all evidence in any way tending to prove the same. We think this sufficient.

Our conclusions are, therefore, that the judgment upon the so-called counterclaim was erroneous and must be reversed and the action dismissed, and it is so ordered. All concur.

## ON PETITION FOR REHEARING.

Since the foregoing opinion was filed, counsel for appellant have presented a petition for rehearing, in which they contend that there is no proper evidence to support the conclusion that, since the action was commenced, and prior to the trial, appellant had converted the grain covered by his mortgage by a sale thereof. In such petition counsel direct our attention to the testimony drawn out on cross-examination of plaintiff over proper objections, and they contend that this is the only evidence that the barley seized under the warrant had been disposed of. If counsel were correct in this contention, we think their argument would be unanswerable. But they have evidently overlooked the fact that later in the trial plaintiff was called as a witness for defendant, and without any objection whatever they proved by his testimony that he had sold the grain to Walker & Huyck, elevatormen. This testimony, coming in as it did without objection, is, we think, fatal to plaintiff's recovery. The petition is therefore denied. All concur.