THE STATE BANK OF BOWMAN, Appellant v. WALTER NELSON and CLAIR S. JOHNSTON, Defendants, and SAMUEL P. HALPERN, Respondent.

(186 N. W. 766.)

**Appeal and error — chattel mortgagee held guilty of conversion of mortgaged crops; whether answer submitted counterclaim arising after action begun held unnecessary to determine on appeal.**

1. In an action to foreclose a chattel mortgage which covered, among other property, crops to be later grown on land occupied by the mortgagors, where the mortgagors were not personally served and where the complaint showed that the owner of the land, who was made a party defendant, claimed an interest in the crop, the latter answered, setting up a lease made with one of the mortgagors subsequent to the date of the

mortgage and with the knowledge of the mortgagee. The lease reserved to the lessor title to the crop as security for the stipulated cash rental and advances. The answer further denied that a legal seizure had been made under the warrant issued in the action, alleged a conversion by the plaintiffs and damages incident thereto, but concluded with a prayer for relief that defendant be decreed to be an owner and entitled to possession. The mortgagor abandoned the premises before the crops were harvested and the defendant, with the plaintiff's acquiesence, caused the grain to be harvested and threshed at defendant's expense.

It is *held*:

The evidence shows that the grain in controversy was converted by the plaintiffs and it fails to show a legal seizure thereof by the sheriff.

**Chattel mortgages — in chattel mortgage foreclosure proceeding, where the answer alleges conversion, and evidence thereon is not objected to, held that defendant might have judgment consistent with the pleading and proof.**

2. Where issue is taken upon allegations of fact constituting a conversion and evidence is introduced upon such issue, without objection and an appropriate measure of damages established, such judgment may be entered for the defendant as is consistent with the pleading and proof.

**Chattel mortgages — issues held not restricted by prayer for prior relief in answer.**

3. Under the record in this case, the issues relating to conversion are not restricted by the prayer for relief in the answer.

**Chattel mortgages — landlord's lien held superior to chattel mortgagee's lien.**

4. The evidence clearly shows that the defendant's advances exceeded the full value of the mortgagor's interest in the crop and hence that the defendant had a superior right thereto.

Opinion filed Jan. 14, 1922.

Appeal from the District Court of Bowman County, *Lembke,* J.

Affirmed.

*Theo. B. Torkelson,* for appellant.

Unity of possession is the distinguishing feature of a tenancy in common, and each co-tenant has an equal right with the other or others to the possession of the subject of the tenancy. Tiedeman on Real Property, § 239, p. 109; 2 Bl, Commentaries, (Chase's ed.) 191.

"The only unity there, is that of possession—because no man can cer-

tainly tell which part is his own." See also collection of cases vol. 29 L. R. A. (N. S.) 225.

Different rules of law apply in matters pertaining to the subject matter of the co-tenancy. Jones v. Cohen, 82 N. Car. 75; Bishop v. Bean, 36 Ala. 80; Hanford v. Tethersow, 2 Jones, (N. Car.) L. 293; Strong v. Cotter, 13 Minn. 82; Gamhill Bridge Co. v. Newby, 1 Ore. 173.

Because of the equal right of possession of co-tenants, one of two or more joint tenants or tenants in common of a chattel cannot maintain replevin or an action for the recovery of a specific chattel or his interest therein against his co-tenant. Paulliam v. Burlingame,, 81 Mo. 111; Balch v. Jones, 61 Cal. 234; Ellis v. Culver, 2 Harr, (Del.) 129; Brown v. Roach, 78 Ind. 361; Alford v. Bardeen, 1 Nev. 228; Hill v. Seager, 3 Utah, 379; Strauss v. Crawford, 89 N. Car. 149.

Trover cannot be mainained for the mere detention or exclusive use of the common property. Webb v. Danforth, 1 Day (Conn.) 301; Leonard v. Scarborough, 2 Ga. 73; Fightmaster v. Beasley, 7 J. J. Marsh (Ky.) 410; Hinds v. Terry, 1 Miss (Walk) 80; Ballou v. Hale, 47 N. H. 347; Tyler v. Taylor, 8 Barb. (N. Y.) 585; Farr v. Smith, 6 Wend (N. Y.) 338; Gilbert v. Dickerson, 7 Wend, (N. Y.) 449; Campbell v Campbell, 2 Murph. (N. Car.) 65.

A conversion to sustain such an action must amount to a total destruction of the property, or something equivalent to it, through the fault of the co-tenant thus converting it. Am. & Eng. Enc. Law, 1st ed. Vol. 11 p. 1128; Alderson v. Schulze, 64 Wis. 460.

One tenant in common of a chattel cannot sue another for a conversion unless the common property is destroyed, carried beyond the limits of the state, or, when perishable, so disposed of as to prevent the other from recovering it. Grim v. Wicker, 80 N. C. 343.

*Emil Scow* and *E. T. Burke,* for respondent.

BIRDZELL, J. This is an action to foreclose a chattel mortgage. The mortgagors, Nelson and Johnston, were not personally served, and did not appear. The defendant Halpern answered. From a judgment in favor of the latter for $1,614.52, the plaintiff appeals, and asks for a trial de novo. The material facts are substantially as follows:

The defendants Nelson and Johnston, farmers in the vicinity of Bowman, had become indebted to the plaintiff bank in the sum of $6,-

339.55. On December 30, 1919, they gave to the bank a note for this amount, payable June 1, 1920, secured by a chattel mortgage upon certain described cattle, horses, and machinery and upon "all crops of every name, nature and description, which have been or may be sown, grown, planted, cultivated or harvested during the year A. D. 1920 on the following described real estate, viz.: On the S. W. ¼ of section 15, N. W. ¼ of section 22, N. W. ¼ of section 10 and the S. ½, S. ½, section 14, all in township 130, range 103." Nelson resided upon the premises at the time, and he and Johnston were in possession. The defendant Halpern owned the land. On February 19, 1920, Halpern leased a portion of the land described in the mortagage to one Rossenborg and the remainder to the defendant Nelson. The plaintiff bank, at the time of the leasing to Nelson, was consulted with reference to the same, and advised in a general way regarding the terms of the lease, although it seems that it did not receive a copy. Halpern made known to the bank his desire that it should not take the personal property under the mortgage during the coming crop season, as the note would mature in June, and the bank manifested its interest in the crop to be raised. The lease was in the nature of a cropper's contract. It covered the N. ½ of section 10, the S. ½ S. ½ of section 14, S. W. ¼ of section 15 and the N. W. ¼ of section 22, except certain of the cultivated lands therein, which had been rented to Rossenborg. The cropper agreed to haul Halpern's share to an elevator at Griffin for 8 cents per bushel, and it was agreed that the division of all grains should be made at that elevator, all the wheat to be delivered in the name of Halpern. The share of each contracting party was to be one-half, and certain expenses were to be divided accordingly. It was expressly agreed that the title of all crops should remain in Halpern until division, and that the cropper's share should be held by Halpern as security for $300 cash rent to be paid on pasture lands and "for any other or further advances that the said party of the first part might make" to the second party. It seems that the mortgagor Johnston did not remain upon the place, and took no part in cropping the land that season; also that Nelson was financially embarrassed to such an extent that it was found necessary for Halpern to make certain advances to him to defray current expense of operation. In addition to the purchase of a tractor by Halpern and his becoming liable for the purchase price of a small truck, which two items are not claimed as advances in this action, Halpern advanced about $1,088.16. This he claims is a lien on

Nelson's share under the contract. Some of the items claimed as advances are contested by the plaintiff, and will be referred to later. On August 6th, Nelson left the country, and Halpern made the arrangements for harvesting and threshing the crop, advising the plaintiff bank as to what he was doing. While Halpern was thus arranging for the threshing and the hauling of the grain with the knowledge of the bank, it had caused the foreclosure proceedings in question to be begun; but it did not advise Halpern of that fact. The latter arranged for one Gross to haul certain of the grain from the threshing machine, and with one Tembreull to haul the balance. He directed one Blank, his father-in-law, to superintend the threshing. On the morning the threshing operations started, after Gross had hauled one load from the machine, Tembreull appeared with a truck and a trailer, which he placed in position to receive the threshed grain, contrary to the directions of Halpern's agent, and he forcibly seized the spout and directed it into his truck over the protest of the agent. Several hours afterwards the deputy sheriff came upon the premises and gave directions to the effect that the agents of the bank were not to be disturbed in taking the grain as the bank had put up a bond. This record does not disclose the return of the deputy sheriff on the warrant of seizure, issued in connection with this foreclosure action. It seems that the grain was later stored in the elevator. As the grain was delivered to the elevator in Bowman storage tickets were not issued to the sheriff; but, at the direction of the bank, they were issued in the name of Nelson, Halpern, and the bank, and the deputy sheriff gave instructions that the tickets were not to be given out.

The plaintiff in its complaint, in addition to the ordinary allegations in a foreclosure action, pleaded the leasing arrangements between Halpern and his codefendants, and that the defendant Halpern claimed an interest in the crop adverse to the plaintiff. In his separate answer Halpern pleaded the terms of the lease, his advancements thereunder, the default of Nelson, the conversion of the crops by the plaintiff, and his damages incident thereto. In the prayer for judgment, however, he asked that he be decreed to be the owner and entitled to the immediate possession of one-half of the crops, in default of which he have judgment for the value; also that he be decreed to have a superior lien on the other one-half for his advances; that possession of this half be restored to the answering defendant, or his lien thereon paid with interest. There is also a prayer for the recovery of special damages claimed by this

defendant to have been incurred through being deprived of this particular wheat for seed purposes; defendant claiming that it had a special value for that purpose above the market value. The trial court found that there were 475 bushels of wheat and 133 bushels and 18 pounds of flax grown on the premises, one-half of which belonged to Nelson, and that there were 140 bushels of rye raised by Rossenborg to which the Nelson mortgage did not attach, and 56 bushels of rye raised on the premises occupied by Nelson to which the mortgage did attach and upon which it became a superior lien to that of Halpern. The court found the wheat and flax to have been converted, that its value, according to the highest market price, was $1,480.90, and that Halpern had a prior lien upon Nelson's share for advances amounting to $1,072.40.

The principal argument of the plaintiff and appellant upon this appeal is that, as Nelson and Halpern were tenants in common of the crop, and as the bank, the appellant, succeeded to the interest of Nelson and took possession under the mortgage in the right of Nelson, it did not convert the crop to its own use. The evidence clearly shows that the bank did not proceed legally under its mortgage to acquire possession of the mortgaged property, but that it took possession by force before any attempt was made to seize the crop under the warrant of seizure. Neither does the record show that any legal seizure has ever been made. It abounds, however, with evidence that those who were active in excluding Halpern from possession of the grain were acting as agents of the bank; thus the bank is in no position to justify under the warrant of seizure. It did, in fact, convert the grain to its own use.

It is next contended that the defendant cannot recover damages as for conversion in this action because the prayer for judgment is for the recovery of specific property, as in claim and delivery, and not for damages for conversion. The record shows that the parties upon the trial contested the issues submitted by the complaint and the answer; so it is both unnecessary and improper to consider now upon appeal whether or not the answer submitted a claim in the nature of a counterclaim arising after the action was begun. See Strehlow v. McLeod, 17 N. D. 457, 117 N. W. 525, 17 Ann. Cas. 423, and Northwestern Port Huron Co. v. Iverson et al., 22 S. D. 314, 117 N. W. 372, 133 Am. St. Rep. 920. The answer alleges a conversion in fact, and upon the trial the issue tendered thereby was accepted by the plaintiff through permission given at its request to file a reply denying the allegations of conversion.

The Code provides specifically that such relief may be granted the plaintiff in any case as is consistent with the case made by the complaint and embraced within the issue. Section 7680, Comp. Laws 1913. And it further recognizes the right of the defendant to file any counterclaim which arises out of a transaction set forth in the complaint, or which is connected with the subject of the action. Section 7449, Comp. Laws 1913. Such a counterclaim is, in effect, a separate cause of action in which the defendant is the plaintiff. Johnson v. Wagner, 42 N. D. 542, 174 N. W. 73. And under the principle of § 7680, the defendant interposing a counterclaim upon which issue is joined is equally entitled to any relief consistent with the case made by his pleading and proof.

But it is contended that the prayer for relief set forth in the counterclaim clearly characterizes the pleading as an effort by the defendant to obtain adjudication merely of his right to possession. The answer cannot be properly construed without taking into consideration the elements of a wrongful conversion. In order to establish that a conversion had taken place it would be necessary for the defendant to show that he had either a general or special property right and possession, or the right of immediate possession. 38 Cyc. 2044. Clendening v. Hawk, 8 N. D. 419, 79 N. W. 878. So in any event, before the defendant may recover damages for conversion, it would be essential that he establish his right of possession. It is true, as contended by the appellant, that, at the conclusion of his answer, the defendant purports to demand a judgment in the alternative for the possession or the value of the property converted; but the relief that may be granted, as hereinbefore stated, is not necessarily limited to the prayer, but it may be any appropriate relief that is within the issues. The preceding paragraphs of the answer and counterclaim clearly allege facts constituting a conversion, and denominate the acts of the defendants as such. They also allege the damages thereby occasioned. Upon the trial, the principal issue contested was that of the conversion, as the evidence related largely to the circumstances surrounding the acts of the plaintiff's agents in depriving the defendant of possession. In addition, proof of the appropriate measure of damages was made without objection as to its relevancy or materiality. The prayer for relief does not necessarily limit or narrow the issues presented by the preceding allegations. Missouri River Trans. Co. v. Minneapolis & St. L. Ry. Co., 34 S. D. 1, 147 N. W. 82; 31 Cyc. 111. But, however strongly a contrary rule

might be contended for in this case, we are of the opinion that in view of the state of the pleadings and of the record made at the trial, a judgment for the defendant, based upon a conversion by the plaintiff is amply warranted.

The plaintiff questions some of the items of advances, but if the questionable items be deducted those that must be conceded, together with the defendant's claim for $300 cash rental for which Nelson's share was pledged as security, amount to more than the value of the share. Hence it is needless to consider the evidence bearing upon the disputed advances.

The plaintiff and appellant further contends that it should be reimbursed in the sum of $135.50 for expenses incurred in connection with the flax crop. Here again, if Halpern should recover in his own right one-half the value of the crop, the remaining half, to which his lien for advances attaches, is not adequate to cover the advances and expenses necessarily incurred by him. The claim of the plaintiff for these expenses was properly denied.

The respondent contends that the court erred in denying him a lien upon certain of the rye and in decreeing the plaintiff to have a first lien thereon. It does not appear to us from the record that the respondent has sustained the burden of proof upon this matter, and hence the judgment will not be disturbed.

It follows that the judgment is right, and it is affirmed.

BRONSON, ROBINSON, and CHRISTIANSON, JJ., concur.

GRACE, C. J., concurs in the result.