[L. A. No. 2261.   Department Two.—August 28, 1909.]

## JOSEPH G. BURNE, Appellant, v. HENRY LEE, Respondent.

FRAUDULENT REPRESENTATION INDUCING PURCHASE—REMEDIES OF PURCHASER.—When a party has been induced by fraud to enter into a contract, he may elect either to rescind the contract by restoring whatever he has received under it, or he may affirm the contract, retaining whatever advantage he may have acquired, and still have his action for damages for deceit practiced upon him in making the contract.

ID.—SUBSEQUENT ARRANGEMENTS AFFECTING SUBJECT-MATTER OF CONTRACT—WAIVER OF DAMAGES.—The foregoing rule is subject to limitations which apply whether the contract to which the charge of fraud is addressed is an executed or executory contract. One of such limitations is that when a party claiming to have been defrauded, enters, after discovery of the fraud, into new arrangements or engagements concerning the subject-matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud.

ID.—COMPROMISE AGREEMENT—WAIVER OF DAMAGES FOR DECEIT.—Where a purchaser of stock in a corporation, after the discovery of the fraudulent representations of the seller inducing the purchase, enters into a compromise agreement with him by the terms of which his claim based upon the fraud was to be settled, he waives any right to damages he might otherwise have had, had he stood upon the original contract, and sued for damages for the deceit.

CORPORATIONS—AGREEMENT TO SELL ALL PROPERTY OF CORPORATION—LAWFUL METHOD IMPLIED—SALE BY DISSOLUTION.—It will be assumed, in construing a contract between the owners of all the stock in a corporation, whereby it was agreed that all of the corporate

property should be sold and the proceeds disposed of in a certain manner, without providing a method whereby this should be accomplished, that the parties had in contemplation any legal method and that such a method would be pursued. The dissolution of the corporation in the manner provided by law would be such a method. So construed, the contract is not illegal, as being a contract to sell the property of a corporation and divide the proceeds among the stockholders, within the inhibition of section 309 of the Civil Code.

ID.—CONSIDERATION FOR CONTRACT—PROMISE OF STOCKHOLDERS TO SELL. —The promise of one of such stockholders to sell all the property of the corporation, including his own interest in it, for the benefit of the other party to the contract, constituted a sufficient consideration for the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. P. James, Judge.

The facts are stated in the opinion of the court.

Frank G. Finlayson, for Appellant.

Sidney J. Parsons, and O. P. Widaman, for Respondent.

LORIGAN, J.—This is an appeal taken by appellant on the judgment-roll.

The action was for damages growing out of alleged misrepresentations of defendant to appellant in the sale of corporate stock.

The complaint alleged that on October 8, 1906, the defendant, who was the owner of sixty shares of stock, being the entire amount subscribed for, or issued, of the capital stock of the West Coast Planing Mill Company, a corporation, offered to sell plaintiff thirty shares thereof for twenty-five hundred dollars, and with intent to defraud plaintiff, and to induce him to purchase said stock, made certain representations as to the value of said shares and the net profits of the corporate business; that believing said representations plaintiff purchased said stock; that said representations as made were untrue in this, that the corporation was not on the eighth day of October, 1906, as represented by defendant, or at any other time, making any profits, and that said shares were in fact worthless and valueless; that said plaintiff discovered that said representations were untrue on November 10, 1906; that, if the facts as represented by defendant were true, said shares of

stock would have been of the value of eight thousand dollars; and plaintiff asked judgment for damages in that amount.

The answer of the defendant consisted of denials and the interposition of an affirmative defense. As to the latter it was alleged, that prior to the commencement of the present action, which was brought on December 4, 1906, the plaintiff brought an action on November 23, 1906, against the West Coast Planing Mill Company and the present defendant and others, his complaint being verified; that in said action the plaintiff set forth the written agreement for the purchase by plaintiff from defendant of the thirty shares of stock of the West Coast Planing Mill Company made October 8, 1906, which recited that the plaintiff purchased from defendant a one-half interest in "the business known as the West Coast Planing Mill Company," for twenty-five hundred dollars, and defendant agreed to receive plaintiff into partnership as an officer and the business manager of the said business; that defendant was to transfer to plaintiff one half of the stock of the aforesaid company; that in lieu of a cash payment for said thirty shares of stock plaintiff transferred to defendant a house and lot in the city of San Diego, which was to be sold by defendant and from the proceeds thereof defendant was to take out the purchase price of twenty-five hundred dollars, and, in addition, plaintiff deposited the said stock with defendant as additional security for the payment of such purchase price; and that each of the contracting parties should be entitled to draw not to exceed twenty-five dollars per week for services rendered.

It is then stated, that in the complaint in said latter action, plaintiff further alleged that subsequent to the eighth day of October, 1906, and prior to November 17, 1906, plaintiff discovered that the representations made by defendant to induce said sale of the interest in said business and said shares of the stock were false; that he then demanded from defendant the return of said twenty-five hundred dollars, offering to surrender all interest in said business and in and to said stock and to rescind said agreement of October 8, 1906, relative to its purchase; that defendant refused to cancel said agreement or return said twenty-five hundred dollars to plaintiff, but instead of said cancellation the defendant offered and proposed to plaintiff that the property belonging to said West Coast

Planing Mill Company should be sold at a price satisfactory to defendant, and that out of the proceeds, after paying all expenses, plaintiff should be paid the sum of twenty-five hundred dollars, and the remainder of said proceeds should go to the defendant. The answer then proceeds to aver that on said November 17, 1906, an agreement to that end, in writing, was entered into between plaintiff and defendant, which provided as follows:—

"That the said parties hereby agreed, they being the owners of the majority of the stock in the corporation known as the 'West Coast Planing Mill Company' to wit—

"That the property belonging to said corporation shall be sold at a price satisfactory to the party of the first part, said price to be in excess of the sum of twenty-five hundred (2500) dollars with all expenses of selling said property added; and the proceeds of said sale to be divided as follows:—

"After paying all expenses of sale, then the sum of twenty-five hundred (2500) dollars shall be paid to the party of the second part, and the residue or remainder shall be paid to the party of the first part in full for his interest in said corporation."

It is then averred that in said former action it was further alleged by plaintiff that until the sale as provided for in the agreement of the seventeenth day of November, 1906, it was agreed between the plaintiff and defendant that plaintiff should continue to be the owner and holder of said thirty shares of stock; that he is now the owner and holder thereof and entitled to the interest in said business as provided for in the agreement of the eighth day of October, 1906, and entitled to act as business manager of the corporation as provided in the agreement of the last date with the right to draw a salary not exceeding the sum of twenty-five dollars a week; and as a partner with defendant in the said business plaintiff is entitled under the terms and conditions of the agreement of October 8, 1906, to an equal voice with the said defendant in the management and control of the business of the said corporation. It is then further alleged in the answer, that the said action so first begun by plaintiff is still pending and undetermined, and in it the plaintiff prayed that it be decreed that under the agreements of October 8 and November 17, 1906, the plaintiff and defendant are to all intents and pur-

poses copartners in the business conducted in the name of said defendant corporation; that said copartnership is the substantial and beneficial owner of the assets and property of said corporation; that the said corporation be dissolved; that defendant be decreed to render an accounting to plaintiff as copartner; that the property and assets of said copartnership be sold to carry out the terms and provisions of the agreement of November 17, 1906, between plaintiff and defendant, or in lieu thereof it be decreed that all of the issued stock of said corporation be sold for the purpose of carrying out the terms and conditions of the agreement of November 17, 1906.

Defendant further averred in said answer that he was willing and ready to carry out the terms and conditions of the contract between himself and plaintiff of November 17, 1906.

The defendant demurred to the sufficiency of the answer in as far as it set forth the affirmative matters of defense to which we have referred, which demurrer was overruled. Upon the trial the court found, among other things, in favor of the defendant as to the facts alleged in the affirmative defense, and entered a judgment in his favor based thereon.

This appeal, as we have said, is taken on the judgment-roll alone, and the only question presented for determination is as to the validity of the ruling of the court on the demurrer to the affirmative defense interposed by the answer.

We do not perceive any error in the ruling of the court in that respect. When the pleadings in this case are crystallized they amount to this: The plaintiff brings an action for damages against defendant for deceit practiced in the sale of certain corporate stock under an agreement made October 6, 1906; the defendant answers and asserts that after the discovery of the alleged deceit by plaintiff, and after negotiations looking to a rescission of the agreement of sale of October 6th, and as a result thereof, a new contract was entered into between the parties on November 17, 1906, relative to the subject-matter of such stock and the sale thereof, and the interests of the respective parties in the business represented by it, which operated as a condonation or waiver of the alleged fraud; and that prior to the commencement of the present suit and after discovery of the alleged deceit and offer of rescission, and subsequent to the making of the contract of November 17, 1906, the plaintiff brought an action which is still pending and

undetermined, in which, relying upon the original contract of October 6th and the subsequent contract of November 17th, he sought in a court of equity a decree for practically a specific performance of the latter contract.

Now, it is well settled that when a party has been induced by fraud to enter into a contract, he may elect either to rescind the contract by restoring whatever he has received under it, or he may affirm the contract, retaining whatever advantage he may have acquired, and still have his action for damages for deceit practiced upon him in making the contract. This rule is, however, subject to limitations which apply whether the contract, to which the charge of fraud is addressed, is an executed or executory contract. One of these limitations is that when a party claiming to have been defrauded, enters, after discovery of the fraud, into new arrangements or engagements concerning the subject-matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud. The rule is clearly expressed in *Schmidt* v. *Mesmer*, 116 Cal. 267, [48 Pac. 54], where it is said:

"If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must on his part comply with the terms of the contract; he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud."

This is but a reiteration of the general rule upon the subject, and while some of the limitations there referred to, and which apply more particularly to executory contracts, have no application in our consideration of the sufficiency of the affirmative defense set up by the answer of defendant, because here the contract of sale of the stock is to be treated as executed, others of them do. It is apparent from the matters alleged in the affirmative defense, that subsequent to the discovery of the alleged fraudulent representations made by defendant when the original contract of October 6th was entered into for the purchase of the stock, and the acquirement by plaintiff of the other rights connected with the business

of the corporation, that the plaintiff did not elect to stand upon the original contract and pursue his legal rights flowing from the assumption of that position, but entered into negotiations with the defendant looking to a rescission of the original contract. Of course, if the mere effort to effect a rescission or compromise had both been ineffectual, it would not have disturbed plaintiff's rights to subsequently stand on the contract and sue for damages for the fraud. But it appears from the answer that while these negotiations for obtaining a rescission did not eventuate in that exact result, still, as the outgrowth of the efforts of plaintiff to accomplish it, a new, and what may be called a compromise agreement was entered into between the parties under which the claim of plaintiff against the defendant was to be settled. By making this new agreement it is quite apparent that plaintiff cannot now stand upon the original contract of October 6th. That contract was abandoned, or rather superseded, by the new contract of November 17th, and by voluntarily entering into the latter the plaintiff is deemed to have waived any right for damages which he might otherwise have had, had he stood upon the original contract. The rights of plaintiff upon the discovery of the alleged fraud and before he opened up any negotiations with the defendant, were clearly defined in law. He might have stood on his original contract and sued for damages for the deceit, or he might have rescinded the contract, and had defendant consented thereto the plaintiff would then have had no right of action over for the deceit. Neither of these things, however, was done. Plaintiff did not stand on his original contract and his effort at rescission resulted in a new agreement relating to the corporate stock in which the defendant obligated himself to make a disposition of the entire business of the corporation and the repayment, from the proceeds, of the purchase price paid by plaintiff for his shares of the stock. Under this agreement, it was not the sale of the plaintiff's interest in the business represented by his ownership of one-half of the issued stock of the corporation from which repayment of the purchase price of his stock was to be made, but was to be a preferred payment which might necessitate the application of the entire proceeds of sale towards its payment. Obviously, this new agreement entered into as a result of the ineffectual effort to obtain an actual rescission by

consent upon the discovery of the fraud by plaintiff, was open to the claim of defendant that it was a compromise and adjustment of all the rights of plaintiff springing from the contract of October 6th; that it superseded that contract and resulted in a waiver of any claim for damages for deceit which plaintiff otherwise might have had.

This being true, the answer setting up the affirmative defense based upon the making of the contract of November 17, 1906, with its attendant circumstances, and the pendency of the action in which plaintiff was seeking to enforce this latter contract, was not subject to any valid objection that its allegations did not constitute a defense. The matters alleged were intended to, and sufficiently did plead the defense of a waiver by plaintiff of a right to maintain any action for damages for deceit by virtue of the agreement of November 17, 1906, made subsequent to the discovery of the alleged fraud, and the validity of which, and his rights under it, the plaintiff was then asserting in an action previously commenced and then pending against defendant for that purpose.

If is further insisted by plaintiff that the agreement of November 17, 1906, is not available to defendant as a waiver here and extinguishment of the obligation of defendant to pay any damages for the deceit practiced by the former in the sale of the stock.

In that regard it is claimed that the agreement was illegal and void, as being a contract to sell the property of a corporation and divide the proceeds among the stockholders, which is prohibited by section 309 of the Civil Code, as construed in *Martin* v. *Zellerbach,* 38 Cal. 300, [99 Am. Dec. 365], and *Kohl* v. *Lilienthal,* 81 Cal. 378, [20 Pac. 401, 22 Pac. 689]. The code provision declares that, "The directors of corporations must not . . . divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock . . . ," and it is insisted that as it is the declared purpose of the agreement of November 17th to sell all of the property of the corporation and divide or apply the proceeds between plaintiff and defendant, as stockholders therein, according to the stipulation in the agreement, the contract is brought within the prohibition of the code section and is void. Of course, the inhibition of the section while directly applying to the directors of a corporation, applies equally to stockholders. What the

directors cannot do in that respect the stockholders cannot do or authorize done. (*Kohl* v. *Lilienthal,* 81 Cal. 378, [20 Pac. 401, 22 Pac. 689].) And by the term "capital stock" used in the section, is meant the actual capital—the property used in the conduct of the business—as distinguished from the shares of nominal capital of a corporation. (*Excelsior W. & M. Co.* v. *Pierce,* 90 Cal. 131, [27 Pac. 44].)

Now it is not necessary to enter into any particular consideration of the section relied on by appellant or to discuss the cases cited, because it is quite apparent that there is nothing in this contract which necessarily brings it within the inhibition of the section. We are not now dealing with an actual sale of corporate property, or any distribution of the capital stock thereof, where from the facts in the concrete case it is to be determined whether or not the law has been violated. We have here simply a contract between the owners of the stock in the corporation (of the whole of it as the pleadings disclose, or as the contract recites, of a majority of it) whereby it is agreed that all the property belonging to the corporation shall be sold and the proceeds disposed of in a certain manner. The agreement does not provide for a method whereby this shall be accomplished, but if it can be accomplished in any legal method it must be assumed that that method was in the contemplation of the parties when the contract was made, and will be pursued. The very section of the Civil Code relied on by appellants—section 309—while prohibiting a division or distribution among the stockholders of any part of the capital stock, declares further that, "Nothing herein prohibits a division and distribution of the capital stock of any corporation which remains after the payment of all its debts upon its dissolution, or the expiration of its term of existence." As the owners of all the capital stock and hence beneficially interested in all the property of the corporation after satisfaction of the claims of its creditors, the contracting parties may obtain a dissolution of the corporation, wind up all its affairs, dispose of its property, and being entitled to the proceeds, be able to carry out the terms of the agreement. This would be one method of carrying out their contract, and as it is a legal one and one which it is possible to pursue, the contention of the appellant that the contract is in violation of the prohibitory legislation of the Civil Code, is disposed of.

It is further claimed that it does not appear that there was any consideration for the asserted waiver of the right of plaintiff to damages for the deceit. We do not think this point well taken. The contract of November 17, 1906, being, as we have seen, a legal contract as far as any prohibitory legislation against it is concerned, the promise of the defendant to sell all the property of the corporation, which included, of course, his own interest in it, for the primary and possibly the sole benefit of plaintiff, was a sufficient consideration.

The judgment appealed from is affirmed.

Melvin, J., and Henshaw, J., concurred.