Argued January 21, affirmed February 23, 1927.

## A. RODERICK GRANT *v.* CARTOZIAN BROS., INC.

### (253 Pac. 531.)

**Fraud—Buyer, Using Rug After Discovering Fraud Alleged, Could not Recover Damages or Avoid Paying Price.**

1. In action by buyer of Oriental rug against store for damages, denying plaintiff's claim and awarding judgment on coun-

---

1. See 24 R. C. L. 357.

terclaim for balance of purchase price *held* not error, where rug was used by plaintiff for years after alleged fraud was discovered, and where misrepresentations amounting to fraud were not shown.

**Sales—Buyer, Using Rug for Years After Discovering Alleged Fraud, Could not Rescind Contract of Purchase.**

2. Buyer of rug, who retained possession and used rug for years, having knowledge of facts claimed to be fraud, could not rescind contract and recover money paid, as retention of fruits of contract was election to affirm.

**Fraud—Buyer of Rug Held not Entitled to Damages for Seller's Fraud, Based on Representations as to Value.**

3. In action by buyer of rug against store to recover damages for fraud practiced upon him in connection with sale, fraud *held* insufficiently shown under evidence; representations as to cost or value or age of rug being insufficient basis for fraud.

**Fraud—Seller's Statement That Rug was of Great Value Held Mere Opinion.**

4. Statement of seller that rug sold was of great value and of great age *held* mere statement of opinion.

**Fraud—Seller's Representation as to Cost of Rug, Based on Amount Paid Plus One Third to Cover Expense of Business, Held not Fraudulent.**

5. In action by buyer of Oriental rug for damages for alleged fraud, representation by store of cost of rug, based on amount seller paid plus one third to cover expenses of doing business, *held* not fraudulent.

**Witnesses—Buyer, Suing Corporation for Damages, Vouched for Credibility of Stockholder of Corporation Whom He Called as Witness.**

6. By calling stockholder of defendant corporation as witness, plaintiff vouched for his credibility, in action against store for fraud in sale of Oriental rug.

---

Contracts, 13 **C. J.**, p. 616, n. 1, 99, p. 621, n. 63.
Fraud, 26 **C. J.**, p. 1215, n. 84, p. 1216, n. 85, p. 1226, n. 87; 27 **C. J.**, p. 18, n. 33, 40, p. 69, n. 30.
Sales, 35 **Cyc.**, p. 71, n. 49, p. 72, n. 57, p. 84, n. 13, p. 142, n. 75, 76, p. 146, n. 13, p. 151, n. 43.
Witnesses, 40 **Cyc.**, p. 2559, n. 65.

From Multnomah: T. E. J. DUFFY, Judge.

Department 1.

AFFIRMED.

---

4. See 12 R. C. L. 250.
6. See 28 R. C. L. 642.

For appellant there was a brief over the names of *Messrs. Davis & Farrell* and *Mr. Wm. D. Bennett.*

For respondent there was a brief over the name of *Messrs. McCamant & Thompson,* with an oral argument by *Mr. Ralph H. King.*

BURNETT, C. J.—Claiming that he had no knowledge of the rug business and was not familiar with the value of rugs, having no means of ascertaining the same and having notified the defendant that he depended wholly upon its representation concerning the worth of such merchandise, the plaintiff avers that he bought a rug from the defendant on March 20, 1920, which purported to be of exclusive design and of great value, agreeing to pay the defendant $1,500 therefor. As false statements which he claims were made by the defendant, the plaintiff alleges as follows:

" 'That the said rug No. 8333 was of exclusive design and pattern and of great age.' 'That said rug was of great value because of its exclusive design and of its historical associations.' 'That the said rug cost the defendant the sum of $1289.00 and that the same was a great bargain at the price, and was of much greater value than was being asked for same.' The defendant then and there exhibiting to plaintiff a cost book which defendant positively stated to plaintiff showed the true and correct cost of said rug to defendant, to wit: a cost of $1289.00. 'That the said defendant was selling same for much less than its true value, and was making but a small margin of profit, to wit: the sum of $211.00.' 'That the defendants officers and agents were rug experts and would guarantee that the said rug could not be duplicated

at anything like the price at which it was being offered, to wit: the sum of $1500.00.' ''

In substance, the plaintiff states that he has paid on the principal of the purchase price the sum of $1,050 and $91.79 as interest, and, on November 24, 1924, he gave to the defendant his promissory note for $450 in renewal of his obligation for the balance of the purchase price. He claims that on December 14, 1922, he discovered the alleged fraud of the defendant, tendered to it the rug in good condition and requested the return of the purchase price, all of which the defendant fails to perform. The plaintiff asserts that he has been damaged in the sum of $1,500 and, without making profert of the rug in question, demands judgment for $1,500 with costs and disbursements. The sale is admitted. The averments of fraud are denied. Likewise, the defendant pleads that although the plaintiff knew all about the rug and the transaction connected therewith, for some two years before he began this action he has continued to use the rug as a floor covering in his residence from its purchase to the present time. The defendant counterclaims on the note given for $450, covering the balance of the purchase price.

The case being at issue, the same was heard before the court and jury and at the close of the plaintiff's testimony the court directed judgment of nonsuit against the plaintiff on his alleged cause of action and, the parties having agreed that the court should instruct the jury what a reasonable attorney fee would be, a directed verdict was ordered by the court in favor of the defendant for the amount of the note and interest plus the attorney fee.

1. Two assignments of error were made. The first is that the court erred in allowing the defendant's mo-

tion for nonsuit, and, second, in directing a verdict in favor of the defendant for the counterclaim.

In the standard precedent of *Scott* v. *Walton*, 32 Or. 460 (52 Pac. 180), Mr. Justice ROBERT S. BEAN lays down the oft-quoted precept as follows:

"A party who has been induced to enter into a contract by fraud, has, upon its discovery, an election of remedies. He may either affirm the contract, and sue for damages, or disaffirm it, and be reinstated in the position in which he was before it was consummated. These remedies, however, are not concurrent, but wholly inconsistent. The adoption of one is the exclusion of the other. If he desires to rescind, he must act promptly, and return or offer to return what he has received under the contract. He cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, and especially his remaining in possession of the property received by him under the contract, and dealing with it as his own, will be evidence of his intention to abide by the contract."

2. For long after he had bought and taken possession of the rug and had knowledge of everything of which he complains, if it existed, the plaintiff retained possession and made use of the rug. Indeed, it seems never to have left his possession until offered in evidence at the trial. He was not in any position, therefore, to rescind the contract and recover the money he had paid.

3–6. Treating the transaction, if we may, as one in which the plaintiff retains the property and attempts to recover damages for the fraud practiced upon him, the result is likewise adverse to the plaintiff. The averment imputed to the defendant that the rug was of great value and of great age is neither definite nor

more than mere opinion. It is charged that the defendant represented the rug to be of exclusive design. That is defined by an expert witness for the plaintiff to be a peculiar pattern so that there would be no other rug of that grade of the same pattern or design of figure. The very same witness testified that this rug did have a peculiar pattern of leaves that he had never seen before, or in any other rug. It was, indeed, of exclusive design. The representation of the cost is not fraudulent, according to the great weight of authorities. A stockholder in the defendant corporation called by the plaintiff as a witness and so vouched for as to his credibility, explained the way he computed the cost of the rug to this effect: that he had paid cash, $966.75, to which, according to the custom of his business through many years, he had added one third of that price to cover the expenses of doing business, rents, freights, overhead cost, etc., which he apportioned among the various articles of his merchandise. Every time an article of merchandise is handled in production or trade its cost is enhanced. An ounce of fine watch screws is more valuable than a ton of pig iron, though the screws come through many processes from that self-same iron. The testimony does not disclose any basis to support any of the charges of fraud. In brief, the whole trend of the evidence is that the plaintiff, although he had bought many rugs, took a fancy to the one in question and, after some weeks of deliberation upon the subject, having an opportunity thoroughly to examine the texture and manufacture of it, agreed to pay $1,500. He went on paying until he had reduced the purchase price to $450, when he renewed his note, and finally became weary of his bargain and sought to rescind. He may

have indulged too extravagantly his taste for Oriental rugs but there is no testimony in the case amounting to fraud or false statement. The most that can be said is that the defendant praised its goods, but not fraudulently so, and the plaintiff is without proof of any allegation necessary for him to sustain in order to recover in this case. He should pay for the rug as he agreed to.

The judgment is affirmed.                    AFFIRMED.

COSHOW, MCBRIDE and RAND, JJ., concur.