226

BONDED ADJUSTMENT COMPANY, *Respondent*, v. WALTER
A. ANDERSON *et al., Appellants*, ALLIED SALES
CORPORATION *et al., Respondents*.[1]

*E. B. Quackenbush,* for appellants.

*W. W. Clarke,* for respondent Bonded Adjustment
Company *et al.*

*Tustin & Chandler,* for respondents Allied Sales Cor-
poration *et al.*

*Ballinger, Hutson & Boldt,* for respondent Allis-
Chalmers Manufacturing Company.

[1]Reported in 57 P. (2d) 1046.

GERAGHTY, J.—In its inception, this was an action to enforce payment of a promissory note executed by the defendants, Anderson and wife, in favor of the Agricultural Bond & Credit Corporation, and assigned to the plaintiff, Bonded Adjustment Company, for purpose of collection. The defendants appeared in the action and, by their amended answer, counterclaim, and cross-complaint, brought into the action Allied Sales Corporation, Howard-Cooper Corporation, Agricultural Bond & Credit Corporation, and Allis-Chalmers Manufacturing Company as cross-defendants. The court sustained demurrers interposed by plaintiff and cross-defendants to the affirmative answer, counterclaim, and cross-complaint, and made an order dismissing the cross-defendants from the action. From this order, the defendants appealed, filing no supersedeas bond, however, for stay of proceedings.

Thereafter, the plaintiff brought the main action upon the note, for trial, and upon proof of the execution of the note and its nonpayment, judgment was entered against the defendants, from which an appeal is also taken.

Both appeals involve essentially the same ultimate issues, namely, whether the facts alleged in the affirmative answer and cross-complaint constitute a defense to the complaint in the main action or warrant affirmative relief against the cross-defendants.

The facts, as alleged, are: March 11, 1930, the appellants gave an order to the Allied Sales Corporation for the purchase of a tractor at the agreed price of $4,475, payable $1,118.75 cash on delivery of the tractor, and the balance in two installments, one in the amount of $1,864.58 due September 1, 1930, the other in the sum of $1,491.67 due September 1, 1931. The deferred payments were to draw interest at the rate of eight per cent.

The order of purchase recited that it was made upon the inducement of no other representation than that contained in the standard warranty of the manufacturer, as set forth on the back of the order. On the back of the order, the company warranted the tractor for six months after the date of shipment, the warranty being limited to the furnishing, at its factory, of such parts of the tractor as should, under normal use and service, appear to the company to have been defective in material and workmanship. No warranty, either expressed or implied, was to be made by the company, other than the above, and the agreement recited:

"No other warranty has been made or exists either expressly or by implication, all statutory and implied warranties being hereby expressly waived and excluded from this transaction, and the COMPANY's liability in connection with this transaction is expressly limited to the repair or replacement of defective parts, all other damages, statutory or otherwise, being hereby expressly waived."

Shortly after the execution of this purchase order, the tractor was delivered to the appellant, the seller, Allied Sales Corporation, taking back a mortgage upon it to secure the deferred payments, for which no notes were given. Immediately after its execution, the mortgage was assigned to the Agricultural Bond & Credit Corporation, alleged by the answer and cross-complaint to be a corporate affiliate of the other cross-defendants.

When the first installment of the deferred purchase price, secured by the chattel mortgage, came due, September 1, 1930, the appellants were unable to make payment in full, but on September 16th paid $1,010.89 and gave their note, due September 1, 1931, for the balance of the installment, $978.90, this being the due date of the final installment of the purchase price.

The appellants, not having met these obligations when they fell due, on March 12, 1932, gave to the Agricultural Bond & Credit Corporation two notes, drawing eight per cent interest, one for five hundred dollars, due on or before March 10, 1932, and the other for $2,443.92, due on or before September 1, 1932, the aggregate of these two notes being the amount then due on account of the purchase price, including interest.

September 10, 1932, the defendant paid the Credit Corporation one thousand dollars, applied first to liquidate the five hundred dollar note, and the balance applied as a credit upon the larger note, leaving an unpaid balance for which the suit was brought.

The tractor was manufactured by the Allis-Chalmers Manufacturing Company. The Howard-Cooper Corporation was the dealer having charge of the territory in which the sale was made, and the Allied Sales Corporation was the immediate selling agency through which, as we have seen, the sale was made to appellants.

The appellants alleged that they were induced to purchase the tractor by false representations made by the respondent Allied Sales Corporation and chargeable to the other respondents by reason of their corporate affiliation and relation to the transaction. It is alleged that the appellants informed the respondents of the character of the service required of the tractor, that the respondents assured them that the tractor would meet their requirements as outlined by them, and particularly that it had power equal to the Holt 60 tractor, although there is nowhere pleaded any specification of what the Holt tractor could do.

In August, 1930, after the tractor had been used by appellants in their farming operations for some time, it developed, as the answer and cross-complaint alleged, that the tractor failed to meet appellants' re-

quirements, as outlined to the respondents before its purchase. It required numerous adjustments and repairs, which the appellants made at their own expense. The respondents, claiming that these repairs were not within the warranty, declined to reimburse appellants for them, and in the early summer of 1931, definitely informed appellants they denied any responsibility.

We have seen that, notwithstanding the alleged failure of the tractor in the summer of 1930, the appellants, in September, paid a cash installment on the purchase price and gave their note for the balance due upon the first installment directly to the Agricultural Bond & Credit Corporation; that, again, March 12, 1932, appellants gave to the same corporation two notes aggregating the whole of the amount then due under the contract and mortgage, and later, on September 10th, paid one thousand dollars on account of these notes.

The appellants have kept the tractor, presumably on the theory that it has been paid for, because they alleged that its value was only nine hundred dollars and claimed damages for the difference between that sum and the purchase price.

Fraud is the basis of appellants' defense to the note in suit and their cross-action for damages, the alleged fraud, as we have seen, being predicated upon misrepresentations and misstatements inducing appellants to purchase the tractor.

The respondents urge in support of the order and judgment appealed from, first, that the statute of limitations had run against the appellants' claim, in that, at the time of filing the cross-complaint, more than three years had elapsed since the discovery of the fraud, if fraud had been committed; and second, that, in any event, appellants waived whatever right of action they might have had by recognizing the contract of pur-

chase and making new arrangements for payment after discovery of the failure of the tractor and the perpetration of the fraud upon them.

■ Our conclusion that respondents' second contention must be sustained disposes of the case and makes discussion of the first contention unnecessary. It is fairly inferable from the allegations of the amended answer and cross-complaint that the appellants had knowledge of the alleged fraud in August, 1930; but, in any event, it is admitted that they had full knowledge in June and August of 1931. Notwithstanding this, they made a new arrangement for credit in September, 1930, under which they secured an extension of time for payment of part of the first installment of the purchase price. Again, on March 12, 1932, after their default on the final installment, as well as on the note given for part of the first installment, they made another arrangement for further time and the giving of two new notes to cover the whole of the debt due upon the tractor.

The facts bring the case clearly within the principle announced in *Keylon v. Inch,* 178 Wash. 522, 35 P. (2d) 73, that, when a party claiming to have been defrauded enters, after discovery of the fraud, into new arrangements or engagements concerning the subject matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud.

In *Schmidt v. Mesmer,* 116 Cal. 267, 48 Pac. 54, quoted in *Keylon v. Inch, supra,* it is said:

"But this rule, which relieves a party when he chooses to sue for damages from many of the acts required of him when he elects to rescind, is subject to some just limitations. If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's

length; he must on his part comply with the terms of the contract; he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud. . . . .

"In *Doherty v. Bell*, 55 Ind. 205, the court say: 'If the appellee, with full knowledge of all the facts, as we think it fair to presume from the allegations in the reply it was intended to charge he had, and after the appellants became the owners of it, agreed to pay the note, *provided a certain extension of time was allowed him,* and in consideration thereof such an extension was given him, we must regard him as having ratified the execution of the note, and as having waived whatever objection or defense he may have had to the manner of its execution.'

"In *St. John v. Hendrickson*, 81 Ind. 350, the court say: 'We fully recognize and approve the rule that a party may retain what he receives, stand to his bargain, and recover for the loss caused him by the fraud. We do not mean to run counter to this rule. We neither hold, nor mean to hold, that affirmance by retention of the thing bargained for cuts off an action for damages. We do hold that where a party, with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract, and waive all right of action for fraud, he cannot maintain an action for the original wrong practiced upon him. Where the affirmance of the contract is equivalent to a ratification, all right of action is gone. . . . Nor are we unmindful of the settled rule that the defrauded party has an election of remedies. . . . We do decide that where a party, with full knowledge, declines to repudiate a transaction known to him to be fraudulent, and fully and expressly ratifies it, he can neither rescind nor maintain an action for damages.' "

The note in suit is a renewal note, covering in part the note given on account of the unpaid portion of the first installment and the final installment of the debt secured by the mortgage.

"If respondent, at the time of executing the renewal note sued on, had knowledge of the alleged fraud practiced upon him in inducing him to give such original notes, he could not now urge such fraud as a defense to the note sued upon." *First State Bank v. Gunderson,* 54 S. D. 473, 223 N. W. 596.

■ In the amended answer and cross-complaint, the appellants alleged they were induced to execute the note in suit by the misrepresentation made to them by the respondent Agricultural Bond & Credit Corporation that it was an innocent purchaser for value of the mortgage. This representation, if made, was one of law and not of fact, and could not be a basis for an action for fraud.

"The general rule is that misrepresentations as to the law, unaccompanied by any misrepresentation or concealment of the fact, cannot be made the basis of a fraud charge.

"In *Upton v. Tribilcock,* 91 U. S. 45, the court quoted approvingly from *Fish v. Clelland,* 33 Ill. 243, as follows:

" 'A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such. See *Star v. Bennett,* 5 Hill (N. Y.) 303; *Lewis v. Jones,* 4 B. & C. 506; *Rasdall v. Ford,* Law Rep. 2 Eq. Cas. 750.' " *Prest v. Adams,* 142 Wash. 111, 252 Pac. 686.

The respondents and appellants stood on equal terms in respect to their knowledge of the law. Furthermore, the appellants knew the existing conditions, that no notes were given when the sale was made, and the one note given subsequently, of which the note in suit was renewal in part, was given to the Credit Corporation itself. The mortgage, of course, was not a

negotiable instrument, and there could be no question of an innocent purchaser in the sense that the appellants would be barred from asserting a valid defense to an action on the purchase price.

What we have said disposes of appellants' assignments based upon the judgment rendered for the balance due on the note, after dismissal of the amended answer and cross-complaint. The answer and cross-complaint admitted the execution of the note, claiming as a defense to its enforcement the fraud inhering in the original sale of the tractor.

While appellants rest their main contention on fraud, there is a suggestion that there was also a breach of warranty; but if so, any right of recovery or defense based upon it was waived by the course of dealing to which we have referred. After a demurrer had been sustained to this defense, the respondent was entitled to judgment on the pleadings, which was in effect granted by the court, although after respondent had made formal proof of the execution and nonpayment of the note.

The judgment and order are affirmed.

MILLARD, C. J., MITCHELL, STEINERT, and TOLMAN, JJ., concur.