Argued March 8; affirmed May 29, 1945

## ANDERSON *v.* LAWS ET AL.

(159 P. (2d) 201)

Before Belt, Chief Justice, and Rossman, Kelly, Bailey, Lusk, and Hay, Associate Justices.

*Charles D. Dolph* and *Sylvanus Neil Smith,* both of Portland, for Carl O. Anderson, appellant.

*Hy Samuels,* of Portland, for respondent Roy D. Laws.

LUSK, J.

This was an action for deceit against Roy D. Laws and Clarence A. Wicks. The defendant Laws moved for judgment on the pleadings, which was granted. From that judgment the plaintiff has appealed.

The complaint sets forth a cause of action based on fraudulent representations inducing the purchase by the plaintiff on March 28, 1944, for $8,000.00, of an interest in a business conducted by the defendants as a partnership under the names of Wicks & Slifman. The misrepresentations alleged related to the value of the business. The defendant Wicks filed a demurrer, which was confessed by the plaintiff, and the rights of that defendant are not now involved. The defendant Laws filed an answer in which he denied the allegations of fraud, and alleged affirmatively that the two defendants and the plaintiff associated themselves together for the purpose of forming a corporation to be known as Wicks Construction Company, which was to carry on the partnership business of Wicks & Slifman and to take over the assets of the partnership; that the plaintiff agreed to pay $8,000.00 for his interest in the corporation; that the parties thereafter filed articles of incorporation with the corporation commissioner of

the State of Oregon, and agreed to divide the capital stock equally among themselves, and that, before the organization of the corporation, the plaintiff "complained of these defendants that there had been misrepresentations made to him in connection with the sale and purchase of his interest in said corporation."

The foregoing allegations are all admitted in a reply filed by the plaintiff.

The answer further alleges that, notwithstanding the complaints about such misrepresentations the plaintiff, together with the defendants, on April 7, 1944, completed the organization of the corporation, and that "pursuant to the terms of an agreement entered into between the stockholders, the plaintiff drew wages from the corporation in the sum of $300 per month" and "took an active part in the operation and management of the corporation" until about the time of filing the complaint in this action, and that by reason of these facts the plaintiff should be estopped from asserting his present claim. The answer then alleges that about April 7, 1944, plaintiff released his claim by entering into the following agreement with the defendants:

"THIS AGREEMENT, made and entered into by and between Clarence A. Wicks, Roy D. Laws, and Carl O. Anderson.

"WHEREAS, the parties to this agreement are the owners of all the capital stock of the Wicks Construction Co., an Oregon corporation, and whereas Carl O. Anderson claims that at the time he purchased his interest in said corporation, there were certain misstatements made in connection with the assets of said corporation. Now, therefore, in order to satisfy the claims of Carl O. Anderson, the parties mutually agree as follows:

"That steps will be taken immediately to sell and dispose of the capital stock owned by Carl O.

Anderson, for which he has paid the sum of $8,000. That for a period of three weeks from date hereof, Roy D. Laws and Clarence A. Wicks shall have the sole right to sell and dispose of said stock, provided, of course, that the price that Carl O. Anderson is to receive for said stock shall meet with his approval and that the terms and manner of payment thereof shall also meet with his approval. At the expiration of three weeks of the date hereof, in the event that Clarence A. Wicks and Roy D. Laws have not completed a sale of the stock belonging to Carl O. Anderson upon the terms and conditions above set forth, then, in that event, Carl O. Anderson shall have the right to sell and dispose of his stock in any manner and upon any terms and to whomsoever as he shall deem best. At the expiration of six weeks from the date hereof, if Carl O. Anderson's stock is not sold as herein provided, then, in that event, the parties hereto mutually agree that the corporation will be dissolved and the first moneys paid upon the liquidation of said corporation will be paid over to Carl O. Anderson, and no divisions will be made between Clarence A. Wicks and Roy D. Laws until Carl O. Anderson shall have received his full $8,000.00.''

It is further alleged that the defendants took steps to sell plaintiff's stock, but were unable to do so in the time specified in the agreement; that thereafter the plaintiff attempted to sell his stock, but, as far as the defendants were able to determine, had not done so; and that on June 8, 1944, at a meeting of the corporation which the plaintiff did not attend, although he was advised thereof, a resolution was properly adopted to liquidate the corporation in order to fulfill the terms of the agreement of April 7, 1944.

The plaintiff in his reply admitted ''that he earned a certain sum of wages for work performed for the

defendants'', and admitted that he signed the agreement of April 7, 1944, and that he did not attend the corporate meeting on June 8, 1944. Otherwise, the plaintiff denied all the allegations summarized in the preceding paragraph hereof.

LUSK, J.

The plaintiff admitted in his reply that he signed the agreement of April 7, 1944, which shows on its face that it was entered into after plaintiff learned that he had been deceived. The question for decision is whether by this conduct he waived his right to recover for the alleged fraud.

■ In 24 Am. Jur., Fraud and Deceit, 42, § 214, it is said to be the general rule that ''if one induced by misrepresentations or fraud to deal or acquire, or to enter into a contract for the acquisition or use of property thereafter, with knowledge of the deception, receives from the party guilty of fraud some substantial concession or enters into a new contract in respect of the transaction, he thereby relinquishes all right to recover or recoup damages because of the misrepresentations.'' So far as we have been able to ascertain, the validity of this principle has never been questioned by any court. It may be found enunciated and applied in numerous cases cited in the foregoing text and in the annotation in 106 A. L. R. 172 to the case of *Bonded Adjustment Co. v. Anderson,* 186 Wash. 226, 57 P. (2d) 1046, 106 A. L. R. 166.

■■ It should be observed that the question here does not relate to a mere waiver of the right to rescind the contract. That may be brought about by ''any delay on his (the defrauded party's) part, and especially his remaining in possession of the property received by

him under the contract, and dealing with it as his own.'' *Grant v. Cartozian Brothers,* 120 Or. 607, 611, 253 P. 531; *Scott v. Walton,* 32 Or. 460, 464, 52 P. 180. But the right to recover damages for the fraud by one proceeding as upon an affirmance of the contract is not so easily lost, and the defrauded party who does not discover the fraud until he has partly performed may go forward with the contract, keep what he received under it, and still maintain his action for damages (*McCabe v. Kelleher,* 90 Or. 45, 51, 175 P. 608); although he thereby waives his right to rescind (*Cameron v. Edgemont Investment Co.,* 136 Or. 385, 398, 299 P. 698). We, therefore, agree with the plaintiff's contention that the performance of work for the corporation or the defendants and acceptance of wages by the plaintiff after his discovery of the fraud amounted to no more than the affirmance of the contract. So much was conceded on the argument by counsel for the respondent.

■ But the act of plaintiff in entering into the new contract in respect of the alleged fraudulent transaction, after he knew that he had been deceived, is in a different category. The case is not to be distinguished on its facts from *Burne v. Lee,* 156 Cal. 221, 104 P. 438. That case also involved an alleged fraudulent sale of corporate stock. The action was one to recover damages caused by fraudulent misrepresentations as to the value of the stock. The defendant, in his answer, pleaded that, after discovering the fraud, the plaintiff tried to induce him to agree to rescind the contract, but he refused, and that they agreed in writing that the property of the corporation should be sold, and out of the proceeds, after paying all expenses, the plaintiff would be refunded the amount of money which

he had paid for his stock and the remainder would go to the defendant, and that there was then pending another suit brought by the plaintiff seeking the specific performance of this agreement. A demurrer to the answer was overruled and judgment entered for the defendant which was affirmed on appeal. The court held that, by entering into the later agreement with knowledge of the facts constituting the fraud, the plaintiff waived his right to recover for the wrong. The applicable rule was stated in substance as above quoted from American Jurisprudence, and was said to apply whether the contract is an executed or executory contract. It was said that the original contract "was abandoned, or rather superseded, by the new contract of November 17th, and by voluntarily entering into the latter the plaintiff is deemed to have waived any right for damages which he might otherwise have had, had he stood upon the original contract." The court continued:

"The rights of plaintiff upon the discovery of the alleged fraud and before he opened up any negotiations with the defendant, were clearly defined in law. He might have stood on his original contract and sued for damages for the deceit, or he might have rescinded the contract, and had defendant consented thereto the plaintiff would then have had no right of action over for the deceit. Neither of these things, however, was done. Plaintiff did not stand on his original contract and his effort at rescission resulted in a new agreement relating to the corporate stock in which the defendant obligated himself to make a disposition of the entire business of the corporation and the repayment, from the proceeds, of the purchase price paid by plaintiff for his shares of the stock. Under this agreement, it was not the sale of the plaintiff's interest in the business represented by his ownership of one-half of the is-

sued stock of the corporation from which repayment of the purchase price of his stock was to be made, but was to be a preferred payment which might necessitate the application of the entire proceeds of sale towards its payment. Obviously, this new agreement entered into as a result of the ineffectual effort to obtain an actual rescission by consent upon the discovery of the fraud by plaintiff, was open to the claim of defendant that it was a compromise and adjustment of all the rights of plaintiff springing from the contract of October 6th; that it superseded that contract and resulted in a waiver of any claim for damages for deceit which plaintiff otherwise might have had.''

Except that the plaintiff in the instant case did not, so far as appears, first seek a rescission of the contract, he did substantially the same thing as the plaintiff in *Burne v. Lee,* supra. He obtained an agreement from the defendants that if his stock should not be sold in six weeks the property of the corporation should be sold and he should be paid out of the first proceeds the amount which he had paid for his stock. He did this, as his pleading admits, after he had ''complained of these defendants that there had been misrepresentations made to him in connection with the sale and purchase of his interest in said corporation''. And, as if to leave no doubt that this agreement was intended, as the California court said, to supersede the original contract, the parties to it therein recited that the plaintiff claimed that such misstatements had been made and that they were entering into the agreement ''in order to satisfy the claims of Carl O. Anderson''.

The authorities relied on by the plaintiff, in our opinion, are not in point. With the exception of a decision of the Texas court, which we shall notice, they merely deal with conduct of the defrauded purchaser

which went no further than to affirm the contract, as, for example, *Van Natta v. Snyder,* 98 Kan. 102, 157 P. 432, L. R. A. 1918A, 102, where a purchaser, after discovering that she had been deceived, continued to pay notes given for the balance of the purchase price; and *McKay v. McCarthy,* 146 Iowa 546, 123 N. W. 755, 34 L. R. A. (N. S.) 911, where a purchaser of stock sold it after learning of the fraud. But in the later Iowa case of *Timmerman v. Gurnsey,* 206 Iowa 35, 217 N. W. 879, the court held that the right to recover damages for fraud had been waived in circumstances which seem to us less conclusive than those present in the instant case. The action was one to recover on notes given for rent under a lease which was to run for two years. The defendants pleaded fraud inducing the execution of the lease, and the court held that their action in entering into a new agreement, which provided for the cancellation of the lease and released them from a portion of the rental reserved by it, and in asking for additional time in which to pay one of the rental notes, constituted a waiver. The court said that the defendants, "in getting such important concession ought not to be permitted to reserve in concealment an intent and purpose directly or indirectly to avoid payment of what they, with full knowledge of the facts, deliberately agreed to pay."

The Texas case above referred to is *Kennedy v. Bender,* 104 Tex. 149, 135 S. W. 524. The case involved a fraudulent sale of stock. After discovery of the fraud and complaint thereof made by plaintiff to defendants, at a stockholders' meeting the defendants offered to donate to the corporation certain shares of their stock to relieve the financial condition of the company, such stock to be placed on the market at fifty cents a share. The defendants then agreed to a demand made by the

plaintiff that he and others who had paid par for their stock should be given additional shares equal in number to those which they had bought. The court held that there was no waiver of the right to sue for fraud. The reasoning of a dissenting opinion casts doubt upon the correctness of the decision; but, however that may be, the case is clearly distinguishable, because the ground of the decision was that "when the stock was donated by the three stockholders it was for the purpose of relieving the financial condition of the company and shows no purpose to compensate Bender for his injuries; that purpose did not exist either on the part of the donors or on the part of the corporation or on the part of Bender". But in the present case the parties expressed in writing their purpose to satisfy the plaintiff's claim by entering into the agreement.

■ It is also argued that the question is governed by the law of accord and satisfaction; that at most the agreement was an executory accord, not binding or enforceable without satisfaction; and that, if there be a question as to whether the agreement was to be accepted in satisfaction of the fraud, it is at most a question of fact to be determined by a jury. We think that the new arrangement, instead of being a mere executory accord, was rather, as the court said in *Burne v. Lee,* supra, "what may be called a compromise agreement  *  *  * under which the claim of plaintiff against the defendant was to be settled"; and that, as that case holds, the waiver of the plaintiff's right to sue for damages for the alleged fraud was based upon a sufficient consideration, namely, the promise of the defendants to sell all the property of the corporation "which included, of course, their own interest in it, for the primary and possibly the sole benefit of the plaintiff". It is true

that the question whether one intends to waive a known right is usually one of fact, but in a case like this where the facts are not in dispute the law conclusively presumes the intent from the person's conduct. To yield to the plaintiff's argument would be to reject a rule firmly imbedded in the law of fraud. There seems to be no question among the courts about the existence of the rule, although there are differences about its application to particular states of fact. See *Bean v. Bickley,* 187 Iowa, 689, 174 N. W. 675, and the dissenting opinion of Judge Sanborn in *Schagun v. Scott Mfg. Co.,* (C. C. A.) 162 F. 209. That the facts of this case bring it within the rule is clear.

For the foregoing reasons the judgment is affirmed.