WILLIAM SCHREINER, APPELLEE, V. TED J. SHANAHAN ET AL., APPELLANTS.

FILED JANUARY 19, 1921. No. 21187.

1. **Sales: CONTRACT: INDEFINITENESS.** An alleged contract of sale of cattle in which the purchaser agrees to pay for the cattle "the best price obtainable" is so indefinite and uncertain as to be unenforceable.

2. **Chattel Mortgages: CONVERSION: LIMITATIONS.** If a mortgagee wrongfully, takes possession of mortgaged chattels before maturity of the mortgage and without consent of the mortgagor, the latter is under no present obligation to seek to repossess himself of the chattels or to take other steps affirmatively indicating nonconsent, and he is entitled to bring his action for the reasonable value of the property unlawfully taken within the four years allowed by the statute of limitations in such cases.

3. ———: ———: **CONSENT: INSTRUCTIONS.** Defendant, mortgagee, relied upon certain written instruments as showing consent of the plaintiff, mortgagor, to take and sell the mortgaged property at private sale before maturity of the mortgage. Plaintiff testified that if he signed such instruments it was done while he was mentally incompetent by reason of excessive intoxication produced and induced by defendant. The court instructed the jury, in substance, that, if this was found to be the fact, then plaintiff would not be bound by such instruments. *Held,* not erroneous.

4. **Evidence: HANDWRITING EXPERT: CROSS-EXAMINATION.** It is not erroneous to refuse to allow an expert upon handwriting to be cross-examined as to the genuineness of the signatures of another than the witness as to whose signatures he was examined in chief, where the genuineness of such other signatures is an element which was required to be established by the cross-examining party in order to sustain his defense, and as to which he might have made the witness his own.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Murphy & Winter,* for appellants.

*Benjamin S. Baker* and *William R. Patrick, contra.*

LETTON, J.

This is an action for conversion. In the first count the plaintiff alleges the execution of a chattel mortgage to the defendant bank on 26 head of heifers, 100 tons of hay, and 150 tons of ensilage, to secure the sum of $1,500 due February 1, 1916, and that defendants before the mortgage was due, and without default on his part, or any reason for the same wrongfully took possession of and converted to their own use 26 head of cattle covered by the mortgage, and certain other property described in the petition not covered by the mortgage.

The second count alleges that the defendants purchased a note payable to one Wiley secured by a chattel mortgage upon property described in the petition, which note was due December 29, 1915; that about December 10, 1915, without cause and without default in the condition of the mortgage, the defendants took possession and converted the property described in the mortgage, and in addition thereto took 29 head of pigs and 29 tons of alfalfa hay belonging to plaintiff.

The defense to the first count is that the defendant Shanahan, who is the president of the defendant bank, was informed that plaintiff was trying to sell some of the mortgaged property; that he went to the farm with one Cohn, and that plaintiff on December 8, 1915, sold the cattle covered by the mortgage to Cohn, with instructions to pay the proceeds to the bank to apply on the debt; that the contract was in writing; and that the cattle were taken away under the contract, and with the knowledge and consent of plaintiff; and that the proceeds of the sale were applied on the indebtedness as directed.

The defense to the second cause of action, in substance, is that defendants learned of some suspicious circumstances with reference to the killing of certain hogs described in the Wiley mortgage, and of the selling of others without the consent of the mortgagee, and it was then agreed by plaintiff that he would sell to Cohn 50 tons of hay, the proceeds to be applied on the mortgage debt, and that 29

tons were delivered and so applied, and, further, that plaintiff authorized the defendant in writing to take possession of the property described in the Wiley mortgage and to sell the same at private sale at the best price obtainable, waiving notice, foreclosure, or public sale, and credit the amount upon the indebtedness to the bank; and that this was done.

The reply sets up that on December 8, 1915, Shanahan came to plaintiff's farm with Cohn, brought liquor with him and plied him with it until he became so drunk that he was incapable of doing business or entering into a valid contract; that he did not knowingly sign a contract with respect to the cattle, or any other property, nor consent to the cattle being taken away. He makes the same allegations with respect to the contract and sale of hay to Cohn, and explains that one of the hogs described in the second mortgage was butchered because it had been injured and had to be killed, and he so advised Shanahan and offered to pay for the hog. He denies that he ever waived notice, foreclosure, or public sale, denies the other allegations of the answer, and says that, if any such writing exists and bears his signature, it was obtained while he was wholly deprived of his reason and understanding by intoxication. The jury found for the plaintiff in the sum of $1,358.81. Defendants appeal.

The evidence is very voluminous and is in conflict on almost every material point. It is evident that the transactions between the parties were very loosely conducted, and it is also evident that there are some circumstances shown by the defense which tend to cast much doubt upon some parts of Schreiner's testimony. It is unnecessary and impracticable to make a detailed statement of the evidence. It is sufficient that the evidence on behalf of the plaintiff tends to support the allegations of his petition and reply, and that on behalf of defendants to sustain the allegations of the answer. The jury, however, gave the greater credence to that on behalf of plaintiff, and we must accept their finding in this respect.

The first assignment of error is that the court erred in its instruction to the effect that, if Schreiner was so drunk that he did not understand the various instruments he signed and had not sufficient mental capacity to reasonably understand the nature of the transaction, this was a defense. It is argued that the court should have gone further and instructed that the contract was voidable only, and if Schreiner, when he became sober, acquiesced expressly or impliedly in the transactions, and did not repudiate them, he would be bound by whatever agreement he made. The facts are undisputed that the defendants took possession of the mortgaged property before the mortgages were due. They contend that they took the property with the consent of Schreiner, and that part of it was sold to Cohn by Schreiner himself.

Three papers have been introduced in evidence to establish the existence of such a sale. These bear date December 8, 1915. The first one recites that William Schreiner and S. L. Wiley have sold to Louis Cohn 44 tons of alfalfa hay, described as second cutting, at $10 a ton, and 6 tons of alfalfa hay, described as third cutting, at $12 a ton. Apparently written with a different pencil appears on the face of this instrument: "The above described hay to be accepted and sold on a commission basis of 50 cents per ton." This instrument is signed by Cohn and Schreiner in presence of Shanahan, but is not signed by Wiley.

The second instrument recites that Schreiner agrees "to sell and deliver to the said Louis Cohn twenty-six (26) head of heifers branded O in left ear, and ten (10) head of steers branded O in left ear, and the said party of the first part covenants and agrees to pay to said party of the second part for the same, the sum of for the best price obtainable." This is also signed by Schreiner and Cohn, with Shanahan as a witness. It will be observed that this instrument lacks definiteness as a contract. If understood literally, it means that Schreiner sells to Cohn for whatever Cohn is willing to pay. We think such a contract is unenforceable. It is entirely indefinite and uncertain as to

price, or, if it can be considered as referring to the price at some market, it fails to fix either time or place. With respect to the 26 head of heifers described in this instrument, defendants can assert no rights thereunder, and unless the evidence established to the satisfaction of the jury that Schreiner actually sold and delivered this property to Cohn for an agreed price, and that Cohn paid the proceeds to the mortgagee, defendants must account for the actual value of this property. But even if Schreiner consented to the taking of the property described in the first mortgage, it is not shown that he waived foreclosure under the statute, and, since the statute was not followed as to notice or public sale, the defendants are liable to account to him for the reasonable value of the property taken. Of course, this does not refer to the hay which he admits was actually sold to Cohn. Mere silence or inaction of a mortgagor of chattels until after property taken from him has been unlawfully sold does not operate to make the price which it brings at such unauthorized sale binding upon him. The unauthorized sale of the property is a tort and the cases cited relating to disaffirmance do not apply. The owner of the property has the right to bring his action for the reasonable value of the property at any time within the statute of limitations, and there was no error in the instruction complained of. *Brashier v. Tolleth*, 31 Neb. 622.

As to the Wiley mortgage, there is a written waiver of foreclosure and consent to private sale in evidence, but the defense to this is intoxication to the extent of incompetency when it was executed, and the jury evidently so found.

The second assignment is that the court erred in allowing expert testimony for the purpose of proving that exhibits 15 and 21 were forgeries, as an attempt to impeach upon immaterial matter and injecting a collateral issue. An examination of the bill of exceptions shows that this testimony was admitted without objection. A great deal of it was brought out by the cross-examination. The assignment is not well taken.

105 Neb.—34

The next assignment is that the court erred in refusing
to permit an expert upon handwriting to be cross-examined
as to the genuineness of the signature of a different party
than the writer of the signature as to which he testified
in chief. The witness had testified as to certain signatures
of the witness Larsen. He was sought to be cross-examined
as to the signature of Schreiner to exhibits 11, 12 and 13,
and an objection on the ground that this was not proper
cross-examination was sustained. Comparison can only
be made under section 7912, Rev. St. 1913, with writing of
the same person which is proved to be genuine. If the
defendants had desired the expert opinion of this witness
as to the genuineness of the signature of Schreiner to these
exhibits, he should have produced him as his own witness at
the proper stage of the trial, and it was not erroneous to
refuse to permit this testimony upon cross-examination.
Furthermore, we have not found that Schreiner admitted
that he signed exhibit 12; and, even if this ruling had been
erroneous, no such prejudice is shown as to justify a re-
versal.

The fourth assignment is that the court erred in allow-
ing the witnesses Hunt and Wiley to contradict Cohn as
to the date of sale of the Hunt cattle, being an attempt to
impeach upon a collateral issue. Cohn testified that he
went to Schreiner's farm with Wiley on December 7, looked
at Hunt's cattle, and bought them, giving him a check
payable to A. B. Hunt; that he had no dealings with Hunt
with reference to the cattle. Hunt testified that he dealt
with Cohn personally over the telephone with respect to the
sale of the cattle, and that Cohn gave him the check in
payment at his house in Florence. This check is dated
December 7, and if Hunt's testimony was believed, it cor-
roborates Schreiner's, and, since the date and the place
it was given were material, it was not erroneous to admit
this evidence.

The next assignment of error is that the court erred
in not sustaining defendant's motion to take away all hay
transactions from the jury, for the reason that the evidence

showed that Schreiner consented that the hay be taken. The court did take away consideration of the 17½ tons of hay that Schreiner delivered to Cohn, but allowed consideration of that hauled by Larsen for Shanahan. Under the principles hereinbefore stated, the jury were entitled to consider whether the hay hauled by Larsen was taken and sold with Schreiner's consent, no foreclosure proceedings having been had.

In conclusion, it is seldom that a case comes up for review in which so much immaterial and irrelevant testimony was offered and received without objection. The instructions of the court state the law as to the issues in the case with scrupulous impartiality and with admirable clearness and perspicuity. The jury might well have found for defendants upon the facts, but the evidence is sufficient to sustain the verdict. It is charitable to say that mistakes were made in the testimony on each side. We find no reversible error.

AFFIRMED.